CASE 11.—ACTION BY GEORGE TERRELL AGAINST THE
     LOUISVILLE WATER CO. AND THE CITY OF
     LOUISVILLE FOR DAMAGES FOR FAILING TO
     FURNISH AN ADEQUATE SUPPLY OF WATER FOR
     PROTECTION FROM FIRE.—November 7.

# Terrell v. Louisville Water Co.

Appeal from Jefferson Circuit Court; Common
Pleas Branch; Second Division.

THOS. R. GORDON, Judge.

From a verdict for defendants directed by the
court the plaintiff appeals—Affirmed.

1.  Waters—Water Company—Defects in Fire Cisterns.—Section
    6 of the charter of the Louisville Water Company provides
    that the company shall keep water enough in its mains to
    extinguish fires. While plaintiff's buildings were burning
    water could not be had from one place because of a defect in
    the fire cistern, and from another place because of the cistern
    being so covered with snow that the firemen could not find
    it for ten minutes. The proof showed that there was an
    abundant supply of water in the mains. Held, That the
    water company is not liable to the owner of the buildings,
    since the fire cisterns are constructed by the city and are
    under its exclusive control.
2.  Municipal Corporations—Torts—Acts of Agents.—A city is
    not liable to a property owner for the negligence of its
    firemen.
3.  Same—Performance of Governmental Function.—A city is not
    responsible to a property owner, if one of its fire engines is
    by negligence allowed to get out of repair, and by this means
    his property is lost.
4.  Same.—In building cisterns for fire protection, a city acts
    in a governmental capacity, and is not liable for damages by
    fire because of their being out of repair.

BENNETT H. YOUNG and MARION W. RIPY, attorneys for appellant.

1. Under the previous rulings of this court, the lower court was authorized to give the peremptory instruction to the jury to find
for the city of Louisville, but we respectfully submit that the former rulings of this court are incorrect, and that upon a careful and thoughtful reconsideration will be overruled.

2. The evidence shows clearly that the water company failed to do its duty as required by its charter, the opinion of the learned trial judge to the contrary notwithstanding. Under its charter it is its duty to keep in its mains at all times an abundant supply of water for fire protection. There can be but one meaning to this; that it is its duty to see that the public cisterns are at all times filled with sufficient water for the extinguishment of fires, and that its mains are so constructed and kept and operated as that the cisterns may be replenished as rapidly as the water is pumped therefrom by the city's fire department. We submit that the destruction of appellant's property, as shown by the evidence, was the result of the water company's culpable neglect in these particulars.

BURNETT & BURNETT for appellees.

### POINTS.

1. Duties of water company, to furnish water for fire protection are performed when its water mains are laid in the streets so that an abundant supply of water can be withdrawn therefrom, to the cisterns, hydrants and attachments furnished by the municipality for fire protection. Section 6, charter of water company.

2. Municipalities.—The city is alone chargeable with the construction and maintenance of fire cisterns, hydrants, and attachments for fire protection. [Ky. Stats., section 2833.)

3. Negligence will not be presumed, and must be proven, and where there is no duty owed, there can be no action sustained because the act complained of was not performed by a party not charged with that duty.

4. Peremptory instruction should be given where there has been no evidence offered to show negligence, and where there is no law charging a duty.

OPINION OF THE COURT BY JUDGE HOBSON— Affirming.

George Terrell is the owner of a lot on the west side of Brook street, between Chestnut and Walnut, in the city of Louisville. On the lot there were two buildings. One was his dwelling house, and the other was a planing mill. On January 31, 1905, about midnight, the planing mill took fire and burned down. The fire was communicated from the planing mill to the dwelling house, and that also burned. He then brought this suit against the city of Louisville and the Louisville Water Company, charging that the loss of his property was due to their negligence in failing to furnish an adequate water supply for fire protection. At the conclusion of the evidence introduced by him, the court peremptorily instructed the jury to find for the defendants. This was done, and, his motion for a new trial having been overruled, he appeals.

The proof on the trial showed, in substance, that when the first alarm was turned in three engines came promptly to the fire. The first engine undertook to get water from a fire cistern at Brook and Water streets, but by reason of a defect in the valve it could get no water, or not enough to do any good. Some of the witnesses say that it got water for 10 minutes, and that then the water ceased by reason of a defect in the valve. Another one of the engines undertook to get water from the fire cistern at Brook and Madison streets; but there was snow on the ground. The street car company had cleared its track, piling the snow at one side. By reason of this the firemen were unable for 10 minutes to locate the

cistern top or get into it. The third engine got water from a hydrant back of the buildings. Later other alarms were turned in, and a number of other engines came, which got water at other hydrants or cisterns further off from the property; but before this was done both of the buildings were substantially destroyed by fire.

There is nothing in the proof conducing to show that there was any lack of water in the mains of the water company. On the contrary, the witnesses who were introduced by the plaintiff testify that there was plenty of water in the mains. Section 6 of the charter of the water company contains this provision: "In the laying and construction of water pipes and aqueducts in the city of Louisville, the same shall be so laid and constructed that an abundant supply of water can be drawn therefrom for the extinguishment of fires; and said corporation shall furnish water to the city of Louisville for the extinguishment of fires and cleaning streets, upon such terms as may be agreed between it and the authorities of said city." The proof shows that an abundant supply of water could be drawn from the mains. The trouble was not in a lack of supply. The difficulty was that the supply in the mains could not be gotten into the engines. The proof does not show any fault on the part of the water company, as the fire cisterns are constructed by the city and are under its exclusive control.

As to the city of Louisville, the peremptory instruction was also proper. In furnishing to its citizens fire protection, the city is discharging a governmental function. It is well settled that the city is not responsible in damages for negligence of its firemen. The same principle must apply to the other agencies

employed by the city as part of its fire department. The city is not responsible to a property owner if one of its fire engines is by negligence allowed to get out of repair, and by this means his property is lost. The thing that was out of repair here was a valve at one place, and at another the top of the cistern was so covered up with snow and ice that it took the firemen some 10 minutes to locate and open it. In building these cisterns the city acted in a governmental capacity, and it is no more liable to the property owner for their being out of order than it would be if the fire chief had been negligent in responding promptly to the alarm, or in his efforts to put out the fire after he arrived on the scene. The cases in which this court has made water companies liable, where property was lost by their failure to furnish a supply of water, all rest upon contracts which had not been performed by the water company and which were held to be made by the municipality for the benefit of the citizens. The liability of a city for an injury to a traveler on one of its highways rests upon the ground that the city owns the highway, and, like other owners of real estate who invite the public upon their premises, must keep them reasonably safe. Greenwood v. Louisville, 76 Ky. 226, 26 Am. Rep. 263; Davis v. Lebanon, 108 Ky. 688, 57 S. W. 471, 22 Ky. Law Rep. 384; Twyman v. Frankfort, 117 Ky. 518, 78 S. W. 446, 25 Ky. Law Rep. 1620, 64 L. R. A. 572; 20 Am. & Eng. Encyc. 1193, 1194.

Judgment affirmed.